MINOO AFKARI-AHMADI *v.* MOHAMMAD T.
FOTOVAT-AHMADI
(SC 18291)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.*

---

* This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued March 17—officially released December 29, 2009

*Christopher P. Norris*, with whom, on the brief, was *William R. Donaldson*, for the appellant (defendant).

*Eva M. DeFranco*, with whom, on the brief, was *Stephanie B. Nickse*, for the appellee (plaintiff).

*Dale Susan Galbo*, for the minor child.

*Opinion*

VERTEFEUILLE, J. In this postdissolution matter, the defendant, Mohammad T. Fotovat-Ahmadi, appeals[1] from the finding of the trial court that he was in contempt of court for failing to pay his share of private school educational expenses for his son as required by a stipulation between the defendant and the plaintiff, Minoo Afkari-Ahmadi, his former wife, that modified the judgment dissolving the parties' marriage. We affirm the decision of the trial court.[2]

The following undisputed facts and procedural history are relevant to this appeal. In January, 1999, the trial court rendered judgment dissolving the marriage of the parties. The dissolution order included stipulations

---

[1] The defendant appealed from the decision of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Because we affirm the decision of the trial court, we need not reach the plaintiff's alternate ground for affirmance regarding the timeliness of one of the defendant's claims on appeal.

regarding custody and child support for the parties' minor son and daughter. The parties negotiated and modified these stipulations several times thereafter, ultimately presenting the stipulation at issue in this appeal to the trial court in January, 2006. The court accepted the stipulation and entered it as a full order. This stipulation granted the parties joint custody of their son, but gave the plaintiff primary residential custody of him. The stipulation required that the son be enrolled immediately in the Brookfield public school system, but established two specified conditions under which he could remain in public school, the first of which was that the son maintain a minimum C grade average, and the second was that the son avoid disciplinary intervention by school authorities. The stipulation further required that in the event of the son's transfer to a private school, the parties were to share equally the private school educational expenses.

The plaintiff subsequently enrolled her son in Brookfield High School. His academic performance soon fell below the minimum C grade average required by the terms of the stipulation, however, and the plaintiff removed him from that school. It is undisputed that the son had no disciplinary problems while in the Brookfield school system. The son's therapist and his guardian ad litem then suggested that the parties confer with an educational consultant, who ultimately recommended a private school and the son's participation in a separate, initial preparatory program located in Utah. The therapist and the guardian ad litem approved the recommendation, and the son was enrolled in the two institutions. The plaintiff paid all tuition and expenses related to his attendance at these institutions, but the defendant refused to reimburse her for his one half of these expenses.

The plaintiff ultimately filed a postjudgment motion seeking that the trial court hold the defendant in con-

tempt for his failure to pay his share of the private school expenses. The defendant claimed in the trial court that the two prerequisites for enrolling his son in private school had not occurred because his son, although he failed to meet the required grade point average, did not have any behavioral issues, and both academic and behavioral problems were required to enroll him in private school. Thus, because his son was not enrolled in a private school in accordance with the terms of the stipulation, the defendant claimed that he had no obligation to pay the educational expenses. The defendant also claimed that the allowance of the son's guardian ad litem and therapist to recommend a private school without any court imposed monetary or geographical limitations constituted an improper grant of judicial authority. Following a three day hearing, the trial court found that the stipulation permitted the son's enrollment in private school if he failed to meet just one of the two standards set forth in the stipulation and that the son had failed to maintain the minimum grade point average required. The trial court thus held the defendant in contempt of court. It additionally concluded that there had been no improper grant of judicial authority. The trial court ordered the defendant to pay his one half of the educational expenses by a date approximately two months following the court's decision. This appeal followed.

On appeal, the defendant contends that the trial court improperly: (1) interpreted the language of the stipulation; (2) delegated judicial authority to a third party, i.e., the guardian ad litem and the therapist; and (3) imposed a contempt order without any factual finding as to the defendant's ability to pay. The plaintiff responds that: (1) the trial court properly interpreted the language of the stipulation; (2) the defendant failed to preserve his judicial delegation claim before the trial court; and (3) the trial court properly imposed the con-

tempt order because the defendant had failed to prove his inability to pay the expenses. We agree with the plaintiff and, therefore, we affirm the decision of the trial court.

I

The defendant first contends that the trial court improperly interpreted the language of the stipulation by finding that his son was enrolled properly in private school for failing to maintain a minimum C grade average at Brookfield High School. More specifically, the defendant asserts that the clear language of the stipulation required both that his son fail to maintain a C average *and* that he need disciplinary intervention before being removed from the public school and enrolled in a private school. The plaintiff responds that the trial court properly interpreted the plain language of the stipulation which, when read as a whole, clearly required that his son could be enrolled in private school either if he failed to maintain a C average` or` if he received disciplinary intervention. We agree with the plaintiff.

At the outset, we set forth the relevant background and legal principles regarding stipulations for judgment. In dissolution actions, the trial court is allowed to accept stipulations crafted by the parties and incorporate them into its order or decree. General Statutes § 46b-66.[3] As a result, "[a] stipulated judgment is not a

[3] General Statutes § 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

At the time of the parties' dissolution judgment, which incorporated their initial stipulation, the text of § 46b-66 consisted of one paragraph identical

judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." (Citations omitted; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990); *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 83, 755 A.2d 196 (2000).

Because a stipulation is considered a contract, "[o]ur interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008). Thus, if "there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007). "[T]he language used [in a contract] must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where

---

to the current subsection (a). Subsequently, the statute was amended by the addition of two new provisions and the codification into subsections (a), (b) and (c); see Public Acts 2001, No. 01-135, § 1; Public Acts 2005, No. 05-258, § 1; and by minor technical changes. See Public Acts 2006, No. 06-196, § 171. For purposes of convenience, we refer to the current revision of the statute, which reflects the statutory language at the time of the 2006 stipulation at issue in this appeal.

the ordinary meaning leaves no room for ambiguity
. . . . Moreover, the mere fact that the parties advance
different interpretations of the language in question
does not necessitate a conclusion that the language is
ambiguous." (Citation omitted; internal quotation
marks omitted.) *Eckert* v. *Eckert*, supra, 692. "Finally, in
construing contracts, we give effect to all the language
included therein, as the law of contract interpretation
. . . militates against interpreting a contract in a way
that renders a provision superfluous." (Internal quota-
tion marks omitted.) *Isham* v. *Isham*, 292 Conn. 170,
182, 972 A.2d 228 (2009), quoting *O'Connor* v. *Water-
bury*, 286 Conn. 732, 743, 945 A.2d 936 (2008). There-
fore, "[w]hen interpreting a contract, we must look at
the contract as a whole, consider all relevant portions
together and, if possible, give operative effect to every
provision in order to reach a reasonable overall result."
(Internal quotation marks omitted.) *Office of Labor
Relations* v. *New England Health Care Employees
Union, District 1199, AFL-CIO*, 288 Conn. 223, 232,
951 A.2d 1249 (2008).

We begin our analysis with the pertinent language of
the stipulation, which provides: "The [son] shall con-
tinue in the Brookfield school system so long as he
maintains a C or better average and does not need
disciplinary intervention such as detentions, suspen-
sions or exclusions. In the event that the [son] achieves
and maintains his academic and behavioral goals within
the Brookfield school system, he can continue to remain
there. In the event that the [son] does not achieve or
maintain his academic and behavioral goals, the [son]
will be enrolled in a private school recommended by
[the son's] therapist and his [guardian ad litem] and
each parent shall pay one half of all costs associated
with said school. The plaintiff and [the] defendant shall
take all necessary steps required to have [the son] tested
for any learning disabilities."

While it is essential to interpret this stipulation as a whole, our overall analysis will benefit initially from separate consideration of each relevant sentence. We start with the first sentence: "The [son] shall continue in the Brookfield school system so long as he maintains a C or better average and does not need disciplinary intervention such as detentions, suspensions or exclusions." We read this sentence as setting forth the intent of the parties in entering into the stipulation: the son will stay in the Brookfield schools "so long as" he maintains a C grade point average *and* he does not need any disciplinary intervention. Thus, both requirements must be met in order for him to stay in the Brookfield public school system.

The second sentence reiterates the need for compliance with the same two requirements: "In the event that the [son] achieves and maintains his academic *and* behavioral goals within the Brookfield school system, he can continue to remain there." (Emphasis added.) Meeting both goals thus is a prerequisite to the son's continued enrollment in the Brookfield school system.

The third sentence sets forth the parties' agreement as to the conditions under which their son can be enrolled in private school if he is unable to meet the conditions for remaining in Brookfield High School. It provides: "In the event that the [son] does not achieve or maintain his academic *and* behavioral goals, the [son] will be enrolled in a private school recommended by [his] therapist and his [guardian ad litem] and each parent shall pay one half of all costs associated with said school." (Emphasis added.) We previously have acknowledged herein an obligation to look at the stipulation as a whole and consider all relevant portions together. Construing the three relevant sentences of the stipulation together makes it clear that the son must *both* maintain a C average *and* refrain from needing disciplinary intervention in order to remain in the

Brookfield school system and avoid enrollment in a private school. His failure to maintain a C average therefore was sufficient to warrant his removal from public school and his enrollment in private school.

As this court repeatedly has noted, "we find significance in the use of the word 'and' between . . . two stated conditions." *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 455, 541 A.2d 1226 (1988). For example, in that case, this court reasoned that the use of "and" in a statute clearly and unambiguously meant that the legislature intended the two conditions occur prior to triggering the statutory provisions. Id. Additionally, in *Penn* v. *Irizarry*, 220 Conn. 682, 687, 600 A.2d 1024 (1991), this court reiterated the significance of the conjunctive "and." In *Penn*, this court held that the use of "and" in General Statutes § 9-329a clearly required that the two stated conditions be fulfilled prior to issuing a new primary election. Finally, we recently reaffirmed the significance of the word "and" in *State* v. *Bell*, 283 Conn. 748, 796, 931 A.2d 198 (2007). In *Bell*, we stated that "by its use of the conjunctive 'and,' [General Statutes § 53a-40] appears to impose two preconditions for an enhanced sentence to be imposed . . . ." Id.; see also *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 719 n.11, 949 A.2d 1189 (2008) (recognizing significance of conjunctive "and"); *Correia* v. *Rowland*, 263 Conn. 453, 470 n.16, 820 A.2d 1009 (2003) (rationalizing that since "cause and prejudice" standard is conjunctive, failure to establish "cause" renders consideration of "prejudice" unnecessary). It is thus clear that the language "academic and behavioral" in the second sentence of the relevant stipulation in the present case and the language "maintains a C or better average and does not need disciplinary intervention" in the first sentence of that stipulation informs our understanding of the third sentence. It necessarily follows that if the son does not meet both goals,

specifically, if he fails to meet *either* the academic *or* the behavioral goal, he cannot remain in the Brookfield public schools and will be enrolled in a private school. We conclude therefore, upon reading the stipulation as a whole, that the trial court properly concluded that the son's failure to maintain a minimum C grade average, despite the absence of behavioral problems, triggered the private school enrollment provision of the stipulation.

## II

The defendant next claims that the trial court enforced an order that improperly delegated judicial authority to a third party. Specifically, the defendant contends that by enforcing the stipulation, the trial court improperly delegated judicial authority to the son's guardian ad litem and his therapist by allowing them to recommend the private school in which the son was enrolled. The plaintiff asserts, however, that the defendant failed to raise this improper delegation claim in the trial court. Specifically, the plaintiff contends that in the trial court, the defendant argued that the form of the delegation was improper, but on appeal in this court, he argues that the delegation itself, regardless of form, was improper. We agree with the plaintiff, and we therefore refuse to reach the merits of this claim because it was not raised in the trial court.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). "The

requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004); see also *Sgueglia* v. *Milne Construction Co.*, 212 Conn. 427, 432 n.5, 562 A.2d 505 (1989) (same); *McKiernan* v. *Caldor, Inc.*, 183 Conn. 164, 166, 438 A.2d 865 (1981) (issue "briefly suggested" in trial court is not distinctly raised). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007).

It therefore follows that "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). "The theory upon which a case is tried in the trial court cannot be changed on review . . . [much like] an issue not presented to or considered by the trial court cannot be raised for the first time on review." *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984); see also *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 290 n.15, 968 A.2d 345 (2009) (rejecting argument presented by plaintiff because it was "new theory" presented for first time on appeal); *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 425, 944 A.2d 925 (2008) (same).

In the present case, a careful comparison of the defendant's trial court memorandum with his appellate brief in this court demonstrates that he posits a different

theory on appeal than the one offered at trial. In the trial court, the defendant clearly asserted that the lack of parameters in the delegation was improper, not that the delegation itself was improper. As the trial court summarized the defendant's claim in its memorandum of decision on the plaintiff's motion for contempt, the defendant contended that, "[h]*ad the court set a geographical limit and a maximum financial exposure* for the parties based upon a reasonable basis in fact, *then such an order could stand.*" (Emphasis added.) The defendant clearly asserted that this decision-making authority would have constituted a proper delegation if it had been presented in a particular form, namely, with geographical and financial limits. This is undoubtedly how the trial court understood the defendant's argument, because it rejected his argument by concluding that "the parties did not see fit to set a geographic limit and a maximum financial exposure for the parties regarding private school."

The defendant clearly did not claim in the trial court that the delegation itself improperly assigned judicial authority; however, this is exactly the claim presented before us on appeal.[4] In his brief in this court, the defendant states that "[t]he trial court erred by upholding and enforcing a court order that improperly delegated judicial authority to third parties." There is no mention of geographical and financial limits in the substantive discussion of this claim. Rather, the defendant contends in his brief that "[r]elevant case law further emphasizes the unenforceability of any court order that wrongly delegates judicial authority, even in the case

---

[4] In his statement of issues on appeal in his brief in this court, the defendant defines the issue as whether "the trial court err[ed] in upholding an order that placed *unfettered* judicial power in the hands of third parties to determine *anywhere in the world* that the child would attend school, *regardless of cost?*" (Emphasis added.) Although this statement appears to raise the same claim he argued in the trial court, his substantive discussion of the issue in his brief attacks the delegation itself, rather than the form of the delegation.

of a stipulation between the parties," and cites cases discussing a trial court's authority to delegate decision-making authority without regard to the form of such delegation. On appeal, the defendant challenges the delegation itself, rather than the form of the delegation, i.e., that it was unlimited with regard to geography and cost, which was his claim in the trial court. We therefore decline to reach the merits of his claim, because it was not distinctly raised in the trial court.

### III

The defendant's final claim is that the trial court's contempt order was improper because the court failed to elicit evidence of the defendant's financial ability before crafting a payment order. The plaintiff responds that it was the defendant's burden to prove any financial incapacity. We agree with the plaintiff, and conclude that the trial court's order was proper.

The following additional facts are relevant to this discussion. Following the contempt hearing, the trial court found the defendant in contempt and ordered him to pay his portion of his son's private school educational expenses, which the court calculated to be $50,167. The trial court ordered that the payment be made on or before a designated date approximately two months after the entry of the order, with interest to accrue at 8 percent on any amount unpaid after the stated date. The court additionally addressed the defendant's claim of inability to pay as follows: "[I]nability to pay is a defense to a contempt motion. However, the burden of proving inability to pay rests upon the obligor. In this case, the defendant has submitted no credible evidence that he was unable to comply with the court order."

Whether the defendant established his inability to pay the order by credible evidence is a question of fact. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to

support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 727, 941 A.2d 309 (2008).

Further, it is well settled that the "inability of [a] defendant to obey an order of the court, without fault on his part, is a good defense to the charge of contempt . . . ." (Internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994). "The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure." (Citations omitted.) *Bunche* v. *Bunche*, 36 Conn. App. 322, 325–36, 650 A.2d 917 (1994).

In the present case, wherein the trial court made a specific finding that the defendant had not presented credible evidence of his inability to pay his portion of his son's educational expenses, the court implicitly found that the defendant was able to pay. That finding can only be reviewed for clear error. In lieu of claiming and demonstrating clear error, however, the defendant attempts to shift his burden of proof to the trial court by asserting that the trial court had an affirmative obligation to seek financial information from the parties. This claim does not comport, however, with the well settled law of this state requiring the contemnor to demonstrate his or her inability to comply with a payment order. We therefore conclude that the trial court properly imposed the contempt order.

The decision is affirmed.

In this opinion the other justices concurred.