******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHRISTOPHER CASIRAGHI *v.* PAULA CASIRAGHI
(AC 42299)

Alvord, Prescott and Moll, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court granting the defendant's motions for contempt. He claimed that the court improperly determined that he wilfully had failed to comply with his financial obligations to the defendant despite a lack of any finding by the court regarding his assertion that he lacked the ability to pay and found that his investment in a certain franchise, C Co., breached the parties' separation agreement despite also finding that he was current on his financial obligations to the defendant at the time that the investment was made. *Held*:

1. The trial court's findings that the plaintiff engaged in wilful violations of his financial obligations were clearly erroneous and it was an abuse of discretion for the court not to have considered the issue of the plaintiff's ability to pay or to have rejected that defense before finding that his failure to meet his financial obligations was wilful: the plaintiff unquestionably raised as a defense that he no longer could fully satisfy his financial obligations as set forth in the dissolution judgment because he had suffered a considerable drop in income due to health problems, and, in support, provided evidence regarding his finances; moreover, the court expressly credited some of the plaintiff's evidence in its written decision and made no indication that it did not credit any of the financial information provided by the plaintiff and the defendant provided no contrary financial records to the court, and the court's finding of wilfulness stood in direct contradiction to the facts found related to the plaintiff's ability to pay; accordingly, the plaintiff met his burden of both raising the inability to pay defense and presenting evidence supporting it that was at least in part credited by the court.

2. The trial court's interpretation of the parties' separation agreement was clearly erroneous, and its finding that the plaintiff breached the agreement by investing in C Co. could not stand; the only evidence before the court was that the plaintiff's investment in C Co. occurred in July, 2015, which unquestionably was before the earliest date on which the plaintiff's obligation to make a lump sum installment payment arose pursuant to the agreement, December, 2015, and, because the agreement limited the plaintiff's right to make such investments only in the event that he was not current on his lump sum payment obligations, and no such obligation existed at the time he invested in C Co., the court's finding was a misinterpretation of the express terms of the agreement.

Argued February 20—officially released October 13, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Stanley Novack*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Michael Shay*, judge trial referee, granted two motions for contempt and denied a motion for contempt filed by the defendant, and granted certain other relief, and the plaintiff appealed to this court. *Reversed in part; further proceedings.*

*Christopher Casiraghi*, self-represented, the appellant (plaintiff).

*Paula Casiraghi*, self-represented, the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Christopher Casiraghi, appeals from the judgment of the trial court rendered on three postdissolution motions for contempt filed by the defendant, Paula Casiraghi.[1] Specifically, the court granted two of the motions for contempt, concluding that the plaintiff wilfully had failed to pay in full his unallocated alimony and child support obligation to the defendant or to make required installment payments toward the satisfaction of a lump sum property distribution award. The court denied a third motion for contempt that alleged that the plaintiff wilfully violated the parties' separation agreement (agreement), which was incorporated into the dissolution judgment, by making a postdissolution investment in a CrossFit franchise, but nonetheless made a finding that the investment had breached the parties' agreement.[2]

On appeal, the plaintiff claims that the court improperly (1) determined that he wilfully had failed to comply with his financial obligations to the defendant despite a lack of any finding by the court regarding his assertion that he lacked the ability to pay, and (2) found that his investment in the CrossFit franchise breached the parties' agreement despite also finding that he was current on his financial obligations to the defendant at the time that the investment was made, which, according to the express terms of the agreement, rendered the investment permissible.[3]  For the reasons that follow, we agree that the court improperly granted the defendant's motions for contempt regarding the unallocated support orders and the installment payments on the lump sum property award because the court failed to consider and to determine whether the plaintiff had the ability to pay. We further agree that the court's finding that the plaintiff breached the agreement by investing in the CrossFit franchise was clearly erroneous. We accordingly reverse those aspects of the trial court's judgment, including the court's remedial orders, and remand for further proceedings on the improperly granted motions for contempt. We otherwise affirm the judgment of the court.

The record reveals the following relevant facts and procedural history. The plaintiff and the defendant married in August, 1997. For decades, the plaintiff has owned and operated a successful business that specializes in the installation and repair of paddle tennis courts. As the trial court indicated in its memorandum of decision, the plaintiff considers his business to be the premier company in this field, and it has operated, at least until recently, profitably and without significant competition. The business requires the plaintiff to travel all over the country, particularly between the months of January and July, to conduct tours of inspection that the court described as "fly-drive weekends in which he traditionally views and assesses literally hundreds of

paddle tennis courts."

In December, 2012, the plaintiff filed for a dissolution of the parties' marriage, and, on September 11, 2014, the trial court, *Hon. Stanley Novack*, judge trial referee, rendered a judgment of dissolution on the stipulated ground that the parties' marriage had broken down irretrievably.[4] The court's dissolution judgment incorporates by reference a comprehensive, written agreement entered into by the parties, both of whom were represented by counsel. Of particular relevance to the issues in the present appeal are articles II, V, and VI of that agreement.

Article II of the agreement addresses the division of the parties' real property. It provides in relevant part that, following the dissolution of the parties' marriage, the parties would continue to own their former marital residence in Wilton as tenants in common, but that the defendant would have the exclusive use and occupancy of the home. The parties agreed to share equally in most of the ownership and maintenance expenses postdissolution, including with respect to, inter alia, payment of the mortgage, real estate taxes, and an existing home equity line of credit. The plaintiff is also responsible for one third of the cost of the homeowners insurance. Pursuant to the agreement, the defendant can elect to sell the marital residence at any time following the dissolution of the parties' marriage in accordance with the terms set forth in the agreement provided that, at the latest, she list the home for sale sixty days before their youngest daughter's completion of high school.[5] See footnote 4 of this opinion.

Pursuant to article V of the agreement, the plaintiff agreed to complete a lump sum property distribution of $485,950 to the defendant on or before December 1, 2024. The plaintiff further agreed to satisfy this obligation by making, at a minimum, ten annual installment payments of $48,595, which were due each year on December 1, beginning in 2015. Payments are to include "all interest due and payable on the remaining balance."[6] Simple interest of 3 percent is to accrue on any unpaid balance of the lump sum property distribution beginning on March 1, 2019. The agreement also provides, however, that, notwithstanding the 3 percent interest provision, "if the [plaintiff] tenders late a payment due under this [a]rticle V for any reason, defined as more than thirty days following December 1 in any given year, interest shall thereafter accrue on the remaining principal balance at a rate of [10] percent per annum." The plaintiff further agreed that the lump sum property payment as set forth in article V of the agreement is to take "precedence to [his] undertaking any new business ventures or opportunities" and that he would not open any new business or make any capital investment in a business of more than $25,000 "unless he [was] current on his obligations to the [defendant]

pursuant to this [a]rticle V." Significantly, paragraph B of article V expressly provides that the plaintiff's obligation to make any lump sum property installment payments and the accrual of any interest on that obligation is "suspended . . . during any month that the [plaintiff] has paid all of the obligations set forth in [article II]," which, as we have discussed, pertains to the ownership and maintenance of the former marital residence.

Article VI of the agreement sets forth the plaintiff's obligation to make monthly unallocated alimony and child support payments to the defendant for a period of twelve years. For the first seventy-eight months, the plaintiff is required to pay to the defendant $16,666.66 per month, amounting to $200,000 per year, following which the payments would step down to $11,666.66 for an additional thirty months, and, finally, to $9000 a month through the end of August, 2026. Article VI expressly preserves the plaintiff's rights to seek modification pursuant to General Statutes § 46b-86 (b),[7] but precludes him from seeking modification on the basis of any increase in the defendant's earnings unless they exceed $75,000 annually. It further precludes the plaintiff from seeking a downward modification for all other reasons other than a "medical catastrophe" that prevents him from operating his business or a declaration of a recession by the National Bureau of Economic Research, provided such recession also has a measurably negative effect on his own employment, income, or business.

At the time of dissolution, the plaintiff was in reasonably good health. In February, 2015, however, the plaintiff was diagnosed with atrial fibrillation. In July, 2015, he had open-heart surgery to repair his heart's mitral valve, which was followed by what the trial court found was "a four month period of recovery [in which] his activities, including driving, were limited." Although the plaintiff was current with his unallocated support obligations through the end of 2015, starting in January, 2016, he unilaterally began reducing his payment from $16,667 to $10,000 per month.

In February, 2016, the plaintiff filed a motion seeking a downward modification of the unallocated support order, arguing that he had suffered a serious decline in his health that rendered him unable to continue to operate his business in the same manner and pace that he had at the time of dissolution. The plaintiff also filed a motion seeking relief from the payment terms of the lump sum property distribution. According to the plaintiff, his declining health rendered his ability to comply with the payment schedule set forth in the parties' agreement impossible. He clarified that he was not seeking a modification of the total amount of the lump sum property distribution but, rather, was asking the court to order only his obligation to make annual payments

suspended for two calendar years, to reduce the amount of each annual payment by one half, and to extend the number of annual payments as needed to allow for full payment at the lower annual rate.[8]

In March, 2016, the defendant filed several motions for contempt. One motion claimed that the plaintiff had failed to make the required monthly, unallocated support payments to her in May, 2015, and in January, February, and March, 2016. Another motion claimed that the plaintiff had failed to make the first annual installment payment toward the lump sum property distribution, which the defendant argued had become due on December 1, 2015.[9]

In May, 2016, the defendant filed objections to the plaintiff's motion to modify the unallocated support orders and to his motion seeking to alter the payment terms of the lump sum property distribution. The defendant argued that, under the express terms of the parties' agreement, which the court incorporated into the dissolution judgment, the plaintiff could seek a modification only in the event of a "medical catastrophe" that "prevent[ed] him from operating his business . . . ." According to the defendant, although the plaintiff's asserted medical situation may have resulted in a *decline* in the business, it did not *prevent* operation of the business. Further, the defendant argued that the plaintiff had received a full medical clearance from his physicians and that he continued to participate in physically strenuous leisure activities such as ice hockey and CrossFit. With respect to the requested changes to the lump sum property distribution order, the defendant argued that the court lacked any authority to modify the property settlement terms to which the parties had agreed.

The plaintiff subsequently filed an objection to the defendant's motion for contempt regarding his lump sum property payment obligation. According to the plaintiff, he had been paying his portions of the ownership and maintenance expenses for the former marital home as required under article II of the agreement and, accordingly, his obligation to begin payment of the lump sum property distribution was suspended in accordance with paragraph 5.1 B of article V of the agreement, which provided that any payments and interest accrual "shall be suspended . . . during any month that the [plaintiff] has paid all of the obligations set forth in paragraph 2.1 [of article II]." Because his obligation to make payments regarding the lump sum property distribution was suspended, he argued, he could not have violated a court order by not making a payment on December 1, 2015, as alleged in the defendant's motion for contempt.[10]

On September 15, 2016, the defendant filed another motion for contempt. The defendant claimed in this motion that the plaintiff had opened a new business

called CrossFit Science Park and had invested in excess of $25,000 in this new business despite not being current on his obligations to the defendant under article V of the agreement. The defendant argued that this was in direct violation and wilful disregard of paragraph 5.1 H of article V of the agreement, which prohibits such investments if the plaintiff was in arrears on his obligations to the defendant.

As a result of numerous continuances requested by both parties and additional delays related to discovery disputes, the court, *Hon. Michael Shay*, judge trial referee, did not hear argument on what the court described as the parties' "plethora of motions" until May 23, 2018. That hearing continued the following day and, subsequently, to August 21, 2018. Each party filed updated financial affidavits and child support guideline worksheets with the court.

On October 4, 2018, the court issued a memorandum of decision disposing of the parties' various motions. With respect to the plaintiff's motion to modify the unallocated support orders, the court concluded that the divorce decree unambiguously limited the plaintiff's right to seek a downward modification of the support orders to three grounds, only one of which was implicated by the plaintiff's motion. Relevant to the plaintiff's motion to modify was the provision that the plaintiff could seek modification if he suffered a "medical catastrophe" that "prevents him from operating his business." Although the court recognized that the plaintiff's heart surgery and atrial fibrillation were serious medical conditions that were "somewhat debilitating" to the plaintiff and, in the absence of the parties' agreement, likely would have constituted a substantial change in circumstances warranting modification, his adverse medical condition did not constitute a "catastrophe" within the usual meaning of that term nor, despite the negative impacts on the business and loss of income, did it prevent him from operating his business. Accordingly, in light of the constraints on modification of the support orders placed on the court by the parties' agreement, the court denied the motion to modify.

The court also denied the plaintiff's so-called motion to effectuate the judgment, in which he had sought relief from his obligations under the lump sum property distribution award. The court first recognized that the lump sum property payment was an award of marital property and that, generally, such awards are not subject to postjudgment modification. As argued by the plaintiff, the court recognized its authority to enter orders merely effectuating rather than modifying the terms of a marital property settlement. The court concluded, however, that the relief requested by the plaintiff would alter the details of the parties' agreement and, thus, constituted an impermissible modification. The court also rejected the plaintiff's argument that his

performance should be excused under the doctrine of impossibility, concluding that the parties had contemplated the risk that the plaintiff might be unable to meet his obligation due to an unexpected occurrence and provided contractual contingencies, including the accrual of interest and the application of future proceeds from the sale of the marital home against the obligation.

The court granted the defendant's motion for contempt regarding unallocated child support and alimony payments. The court determined that the support orders were clear and unambiguous, and that the plaintiff breached the orders by unilaterally choosing to reduce his unallocated support payments to the defendant from $16,666.66 per month to $10,000 per month, resulting in an arrearage of $213,333.12. The court indicated that the defendant had "demonstrated by clear and convincing evidence that the [plaintiff]'s actions amount[ed] to wilful contempt," although the decision is silent as to the nature of this evidence.

The court also granted the defendant's motion for contempt regarding the lump sum property award, finding that the plaintiff was in arrears on his obligation to make annual payments toward the lump sum property distribution. The court found that article V of the parties' agreement, incorporated into the judgment as an order of the court, was clear and unambiguous. The court further found that, as of the date of the hearing, the plaintiff had "failed and neglected to make any annual lump sum payments to the [defendant] commencing December 1, 2015," and that this failure constituted a breach of the court's order. As a result of that breach, the court concluded that the plaintiff was in arrears on his obligation in the amount of $145,785 plus monthly accrued interest of $137,685.72. The court again indicated that the defendant had "demonstrated by clear and convincing evidence that the [plaintiff]'s actions amount[ed] to wilful contempt." The court did not discuss the evidence and, as previously noted; see footnote 10 of this opinion; failed to address the plaintiff's argument that his duty to pay was suspended by his continued payment of his obligations pertaining to the former marital residence.

The court denied the defendant's other motion for contempt concerning the plaintiff's investment in the CrossFit franchise. The court found that, although the plaintiff had breached the parties' agreement, his "actions were made in good faith, with the reasonable expectation that his financial situation would improve" and that the defendant had "failed to meet her burden of proof, by clear and convincing evidence, that the [plaintiff]'s actions amounted to wilful contempt." The plaintiff had argued that his investment in the CrossFit franchise had occurred in 2015 at a time when he was current on his obligations to the defendant and, there-

fore, the investment technically had not breached the agreement. The court never expressly addressed that argument in concluding that the plaintiff was in breach.

By way of relief, the court found that the total arrearage owed by the plaintiff to the defendant was $500,298.55, and ordered him to make monthly installment payments of $5000, beginning on November 1, 2018, until the sum was paid in full.[11] The court also awarded the defendant $75,000 as "a contribution toward the legal fees and costs of suit incurred by [her] in connection with this case," which the plaintiff was ordered to pay in monthly installments of $2500 beginning on November 1, 2018. Finally, the court ordered a contingent wage withholding order pursuant to General Statutes § 52-362 (b) to secure future unallocated support payments. The court found that the plaintiff earned net income from employment of $180,700 based on gross income of $283,000, and that the plaintiff also received additional unspecified income from a rental property.

On October 22, 2018, the plaintiff filed a motion for reargument, asserting many of the same arguments he now makes on appeal.[12] The plaintiff sought reargument of the court's findings of contempt regarding the lump sum property distribution and unallocated support orders and its determination that his CrossFit investment had breached the parties' agreement. The plaintiff also sought reargument of the court's conclusions that the doctrine of impossibility was inapplicable and that the 10 percent interest penalty provision was not void and unenforceable as against public policy. Finally, the plaintiff sought reargument of the "structure of the court's order for payment of the arrearage and counsel fees." The court denied the motion for reargument on November 6, 2018, without comment. This appeal followed.

Following oral argument, we ordered the trial court to issue an articulation responding to the following questions: "In holding the plaintiff in contempt with respect to his obligation to pay the defendant $200,000 per year in unallocated alimony and child support, did the trial court conclude that he had an ability to pay such support notwithstanding its finding that his net yearly income as of August 21, 2018 was $180,700? If the court concluded that the plaintiff had the ability to make such payments, what facts did it find or rely upon in reaching that conclusion? In holding the plaintiff in contempt for failing to make annual lump sum property payments to the defendant pursuant to article [V, paragraph] 5.1 A and C of the parties' separation agreement, did the trial court find, pursuant to [paragraph] 5.1 B, that the plaintiff had not paid his obligations set forth in article [II, paragraph] 2.1 of the agreement? If the court concluded that the plaintiff had not complied with [paragraph] 2.1, what facts did it find or rely in reaching

that conclusion?"

The court issued an articulation on March 17, 2020. The court indicated that it "made no specific finding that the plaintiff had the ability to pay the unallocated alimony and child support, either at the time of his motion or at the time of the judgment." The court went on to note, however, that the $180,700 of income reported on the plaintiff's updated August 21, 2018 financial affidavit reflected only a partial year's income. The court further indicated that, although it made no specific finding that the plaintiff had not paid all of the obligations set forth in article II, paragraph 2.1 of the agreement, the court believed that the defendant had offered unrebutted evidence that the plaintiff did not pay his share of the homeowners insurance premium in 2016, one of the obligations listed in paragraph 2.1, and, therefore, "the court proceeded as if there was no suspension" of his obligation to begin making the installment payments on the lump sum property distribution order contained in article V of the agreement.[13] We note that the parties were given an opportunity to file supplemental memoranda addressing the trial court's articulation, but neither party filed a response. We turn now to the issues raised by the plaintiff on appeal.

I

The plaintiff first claims that the court improperly granted two of the defendant's motions for contempt. Specifically, he claims that the court improperly found him in wilful noncompliance with his unallocated support obligation and with the lump sum property distribution order despite conclusive and unrebutted evidence that he lacked the ability to pay because of a reduction in his annual earnings. We agree that the court failed to give due consideration to whether the plaintiff had the ability to pay his financial obligations, particularly in light of the court's express findings regarding the amount of the plaintiff's net income.[14] This lapse in the court's analysis leaves us with a definite and firm conviction that the court's findings that the plaintiff engaged in wilful violations of his financial obligations are clearly erroneous. Accordingly, we reverse the court's granting of the defendant's motions for contempt and the resulting remedial orders, and remand for further proceedings on the motions, including a new hearing to identify properly any arrearage that may be owed to the defendant and to craft new remedial orders as appropriate.[15]

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . If the underlying court order was sufficiently clear and unambiguous, we . . . determine whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the viola-

tion was wilful or excused by a good faith dispute or misunderstanding. . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or was unable to do so." (Citations omitted; internal quotation marks omitted.) *Brody* v. *Brody*, 145 Conn. App. 654, 662, 77 A.3d 156 (2013).

Accordingly, a party who is unable to comply with financial orders contained in a dissolution judgment due to a demonstrable inability to pay has a proper defense to a claim of contempt. See, e.g., *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, 294 Conn. 384, 397, 985 A.2d 319 (2009) ("[i]nability to pay is a defense to a contempt motion" (internal quotation marks omitted)); *Bauer* v. *Bauer*, 173 Conn. App. 595, 600, 164 A.3d 796 (2017) ("inability of an obligor to pay court-ordered alimony, without fault on his part, is a good defense to a contempt motion"). "Whether [a party has] established his inability to pay the order by credible evidence is a question of fact. Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, supra, 397–98.

In the present case, the plaintiff unquestionably raised as a defense before the trial court that he no longer could fully satisfy his financial obligations as set forth in the dissolution judgment beginning in 2016 because he had suffered a considerable drop in income due to his health problems.[16] In support of this defense, the plaintiff provided testimony regarding his finances. Through that testimony, he entered into evidence his federal tax returns for 2014 through 2016. These returns show the plaintiff's net income declined from $474,128 in 2014, when the agreement was executed, to $220,324 in 2015, and $205,595 in 2016.[17] He also submitted yearly

profit and loss statements from his business, including one for 2017 showing that his income from the business in 2017 was similar to the two prior years. Finally, he filed a financial affidavit at the August, 2018 hearing from which his 2018 annual gross income could be calculated as $282,880, resulting in a net annual income of $180,700. The record discloses no documentary evidence showing any additional substantial sources of income for the plaintiff.[18]

The court makes no indication in its memorandum of decision that it did not credit any of the financial information provided by the plaintiff. The defendant provided no contrary financial records to the court, and, although the defendant asserted at oral argument before this court and in her testimony to the trial court her belief that the plaintiff was "cooking the books" with respect to the amount of money available to him through his business, she also conceded that her lawyer had not offered evidence of any improper accounting to the court in support of her motions. The court expressly credited the plaintiff's financial affidavit provided to the court at the August, 2018 hearing in its written decision, finding that "the [plaintiff] has a net income from employment in the amount of $180,700 based upon a gross income of $283,000."

It is undisputed that the plaintiff's yearly unallocated support obligation to the defendant alone totals $200,000. On top of that obligation are the additional requirements that the plaintiff pay his share of expenses related to the ownership and maintenance of the former marital home, which the parties agreed amounts to, at a minimum, an additional $40,000 annually. The plaintiff is also required under the parties' agreement to maintain both medical insurance for the children and a $2.5 million life insurance policy benefitting the defendant, which annual premiums total approximately $42,000. To the extent that he is also responsible for making the approximately $48,000 yearly lump sum property distribution installment payments, his total obligations to the defendant and the children exceed $300,000, and this estimate of his total obligations does not account for any of his reasonable and necessary living expenses. In short, the plaintiff's financial obligations appear clearly to exceed the income attributed to him by the trial court.

Although the court explained that it lacked any authority to alter the parties' agreement, it nevertheless failed to set forth any analysis of the plaintiff's finances either at the time of the alleged contempt or as of the date of the hearing on the defendant's motions, and it acknowledges in its articulation that it "made no specific finding that the plaintiff had the ability to pay the unallocated alimony and child support, either at the time of his motion or at the time of the judgment." A party's inability to pay in accordance with a court order

is a proper defense to a motion for contempt; see *Afk-ari-Ahmadi* v. *Fotovat-Ahmadi*, supra, 294 Conn. 397; and the plaintiff met his burden of both raising that defense and presenting evidence supporting it—evidence that was at least in part credited by the trial court. It was an abuse of discretion for the court not to have considered the issue of the plaintiff's ability to pay or to have rejected that defense out of hand before finding that the plaintiff's failure to meet his financial obligations to the defendant was wilful. Because the court's finding of wilfulness stands in direct contradiction to the facts found by the court related to the plaintiff's ability to pay, we are left with the definite and firm conviction that the finding is clearly erroneous and, thus, cannot stand. Accordingly, we remand for a new hearing at which his defense may be duly considered by the court. Furthermore, because the plaintiff's ability to pay is a fact that also should have been considered by the court in constructing its remedial orders, we necessarily must also reverse those orders.

This decision should not be read as countenancing the plaintiff's decision to engage in self-help by unilaterally reducing his payments to the defendant prior to seeking modification or as taking any position on whether, in fact, the plaintiff has the ability to meet the substantial financial obligations to which he agreed, which agreement also included strictly limiting his rights to seek modification. Nevertheless, because the only evidence presented and relied on by the court in its decision supports the plaintiff's argument that he was unable to continue to pay in full his unallocated support payments and other financial obligations, and the trial court failed to reconcile its findings regarding the plaintiff's income with its determination that the plaintiff's failure to pay the defendant was wilful, we conclude that the trial court improperly found him in contempt and granted the defendant's motions.[19]

II

The plaintiff also claims that the court improperly determined that his investment in the CrossFit franchise breached the parties' agreement. Specifically, the plaintiff argues that the court misinterpreted the relevant portion of the parties' agreement. We agree.

"Because a separation agreement incorporated into a dissolution decree is in the nature of a contract, we note the following general principles of contract interpretation. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective

perception of the terms. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . When construing the contract, we are mindful that [t]he contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . In giving effect to all of the language of a contract, the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; internal quotation marks omitted.) *Flaherty* v. *Flaherty*, 120 Conn. App. 266, 269–70, 990 A.2d 1274 (2010). Applying these principles to the agreement incorporated into the dissolution judgment in the present case, we conclude that the trial court's interpretation of the agreement was clearly erroneous, and, thus, its finding that the plaintiff breached the agreement cannot stand.

The agreement expressly and unambiguously provides that the plaintiff's obligation to complete the lump sum property transfer to the defendant in accordance with article V of the agreement was to take "precedence to [his] undertaking any new business ventures or opportunities . . . ." To ensure this, the plaintiff agreed to restraints on his right to open or to invest in new business ventures postdissolution. Specifically, the agreement provides that, going forward, the plaintiff, either individually or through his business, could not open any new businesses or make any capital investment in a business of more than $25,000 "*unless he is current on his obligations to the* [*defendant*] *pursuant to this* [*a*]*rticle V.*" (Emphasis added.) The agreement further provided in relevant part that any installment payments toward the satisfaction of the lump sum property award set forth in article V of the agreement "shall be payable annually *commencing on December 1, 2015* . . . ." (Emphasis added.)

In its memorandum of decision, the court found that the provision limiting the plaintiff's right to make post-dissolution investments "was certainly clear and unambiguous . . . ." It also found that the plaintiff made an investment in the CrossFit franchise "[a]t some point in 2015," and that "his investment was well in excess of [$25,000]." The only evidence before the court was that this investment occurred in July, 2015, which unquestionably was before the earliest date on which the plaintiff's obligation to make a lump sum installment payment arose pursuant to article V of the agreement. The court appears not to have considered this fact, however, in reaching its conclusion that the plaintiff "was clearly in breach" of the investment limiting order. Legally and logically, however, because the agreement limited the plaintiff's right to make investments only in the event that he was not current on his lump sum payment obligations, and no such obligation existed at the time he invested in the CrossFit franchise, the

court's finding was clearly erroneous and a misinterpretation of the express terms of the agreement. Although we reverse the court's factual finding, because the court denied the motion for contempt, it is unnecessary to reverse the court's judgment on the motion.

The judgment is reversed with respect to the granting of the defendant's two motions for contempt related to the unallocated support orders and the lump sum property distribution award, the related remedial orders, and with respect to the finding that the plaintiff was in breach of the investment limitation provision contained in article V of the agreement, and the case is remanded for a new hearing on the motions for contempt, at which the court may recalculate any arrearage owed by the plaintiff to the defendant and impose reasonable remedial orders as appropriate; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] According to the plaintiff's appeal form and his statement of the issues on appeal, the plaintiff ostensibly also appeals from the court's denial of his own postdissolution motions, which sought (1) a downward modification of his unallocated alimony and child support obligation, (2) relief from the payment terms of a lump sum property distribution award, and (3) an opportunity to reargue these rulings and its granting of the motions for contempt. The plaintiff, however, has not briefed any specific claims of error with respect to these other rulings and, thus, has abandoned those aspects of his appeal. See *Corrarino* v. *Corrarino*, 121 Conn. App. 22, 23 n.1, 993 A.2d 486 (2010) (failure to brief claims of error with respect to rulings listed on appeal form constitutes abandonment of any claim that could have been raised); see also *Traylor* v. *State*, 332 Conn. 789, 809 n.17, 213 A.3d 467 (2019) ("[r]aising a claim at oral argument is not . . . a substitute for adequately briefing that claim"). Although we are solicitous of self-represented parties, "the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 240, 98 A.3d 93 (2014). "It is necessary to this court's review of a party's claims on appeal that his brief contain, inter alia, argument and analysis regarding the alleged errors of the trial court, with appropriate references to the facts bearing on the issues raised." *Zappola* v. *Zappola*, 159 Conn. App. 84, 86, 122 A.3d 267 (2015).

[2] Although the court denied the motion for contempt, the plaintiff is aggrieved by the court's adverse factual finding with respect to that motion because any breach of the agreement could be used against him in subsequent contempt proceedings. See *McKeon* v. *Lennon*, 131 Conn. App. 585, 607, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011).

[3] Both parties were represented by counsel at the time of the dissolution judgment and throughout the postjudgment proceedings that underlie this appeal. Each has elected, however, to appear as a self-represented party before this court. The briefs provided to this court lack needed clarity with respect to the issues being raised and analysis of those issues. See footnote 1 of this opinion. Nonetheless, we address all issues properly raised and sufficiently briefed, albeit not necessarily in the same order. With respect to additional claims of error that the defendant has attempted to raise for the first time in her appellee's brief, all such claims are unreviewable because she failed to file her own appeal or a cross appeal challenging those aspects of the court's judgment. See also footnote 12 of this opinion.

[4] The parties have three daughters from the marriage, who, at the time of the dissolution judgment, were fourteen, twelve, and nine years old.

[5] The agreement provides that the defendant is entitled to any equity left in the property provided that 50 percent of that amount is to be credited as an offset against any balance remaining on the plaintiff's lump sum property obligation to the defendant as described in article V of the agreement, and, if such credit exceeds any balance due, the resulting overage is to be paid directly to the plaintiff.

[6] The plaintiff is permitted under the agreement to prepay all or any part

of the lump sum obligation at any time.

[7] General Statutes § 46b-86 (b) provides in relevant part that, following a dissolution of marriage awarding alimony, "the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party. In the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified, including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith."

[8] The plaintiff captioned his motion as a motion "to effectuate judgment," making the argument that, because he was not seeking a reduction in the total amount of the lump sum distribution, the court could, pursuant to its general authority to make orders necessary to effectuate a dissolution judgment, alter the payment terms that were set forth in the parties' agreement. The court clearly rejected this argument by denying the motion, and this is among those determinations that the plaintiff has failed properly to challenge in the present appeal. See footnote 1 of this opinion.

[9] Another motion for contempt concerned the plaintiff's alleged failure to pay his share of certain medical and extracurricular expenses for the children. Although the court denied that motion, concluding that the defendant had failed to demonstrate that the plaintiff's actions were wilful, it nevertheless concluded that the plaintiff owed the defendant an arrearage of $3494.71 with respect to these items and incorporated that amount into the cumulative total arrearage owed to the defendant.

[10] In its decision granting the motion for contempt, the trial court failed to address this argument.

[11] This amount later was amended by the court to $510,298.55, to reflect additional arrearages accumulated by the plaintiff for failing to pay in full his unallocated support obligations in September and October, 2018, which were not accounted for in the court's original October 4, 2018 decision. The change was made in response to a subsequent motion for contempt filed by the defendant and granted by the court. Additional motions for contempt against the plaintiff currently are pending before the trial court.

[12] On October 23, 2018, the defendant filed a "motion for articulation" with the trial court in which she essentially challenged the court's finding that the plaintiff was current on his obligations to the defendant through 2015 and, accordingly, sought changes to the court's calculation of the arrearage owed to her by the plaintiff. She also filed a motion to reargue, seeking an order for immediate payment of all arrearages rather than monthly installment payments. On October 24, 2018, the defendant filed a second motion to reargue raising additional issues. The court denied all three motions on November 6, 2018.

To the extent that the defendant was aggrieved by the court's October 4, 2018 rulings or the denial of her subsequent motions to reargue, she did not file an appeal or cross appeal from those judgments and, accordingly, any issues challenging the court's rulings, to the extent that they are raised in her appellee's brief, are not properly before us. See Practice Book § 61-8; *Gagne* v. *Vaccaro*, 311 Conn. 649, 661–62, 90 A.3d 196 (2014).

[13] In its articulation response, the trial court seeks to justify the lack of any findings regarding the plaintiff's ability to pay and the status of his obligations set forth in article II, paragraph 2.1 of the agreement, which was relevant to whether the lump sum property distribution payments were required, by pointing to evidence in the record that arguably may have supported *implicit* findings that he had the ability to pay and that he was not current on his obligations regarding the former marital home. By stating that it never made such findings, however, these recitations of fact, even if they find support in the record, are unavailing because they cannot substitute for the initial lack of findings. See *Koper* v. *Koper*, 17 Conn. App. 480, 484, 553 A.2d 1162 (1989) ("[a]n articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision").

[14] As previously indicated, with respect to the lump sum property payments, the court failed to address in its decision whether the plaintiff's obligation to make one or more of the lump sum property installment payments at issue was suspended in accordance with the express terms of

the agreement because the plaintiff was paying his portion of the ownership and maintenance of the former marital home. The court indicated in its response to an articulation request from this court that it never made any specific finding that the plaintiff was not current on his obligations under article II of the agreement and had "proceeded as if there was no suspension." Although the plaintiff has failed to raise or brief this issue as a claim of error on appeal, the question of whether lump sum property payments were due and owing should be considered by the court on remand in ruling on the motion for contempt and in recalculating the amount of any arrearage owed by the plaintiff. Any suspension of the plaintiff's payment obligation would have affected a proper determination by the court of whether the plaintiff was in contempt for failing to pay the lump sum property order and also would have affected the calculation of the total amount of any arrearage owed to the defendant by the plaintiff. Although the plaintiff has not briefed this issue as a separate basis for reversal of the contempt finding, that does not preclude its consideration by the trial court on remand.

[15] "[E]ven in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *Brody* v. *Brody*, 153 Conn. App. 625, 636, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014). In the present case, the lack of any findings by the court regarding the plaintiff's past or present ability to pay his obligations not only fatally undermines the court's finding of contempt but also the court's remedial orders.

[16] The plaintiff only filed a written objection to the motion for contempt directed at his failure to make installment payments toward the lump sum property award, and, in that objection, argued only that his obligation to make installment payments was suspended under the terms of the agreement and, thus, he could not be in violation for nonpayment. Nonetheless, it is clear from our review of the record, which includes the transcripts of the hearing, as well as other pleadings before the court, that the plaintiff clearly placed the court and the defendant on notice of his claim that he was unable fully to satisfy his payment obligations under the terms of the dissolution judgment because he did not have the financial means to meet his obligations.

[17] We have calculated these net income figures from the plaintiff's 1040 federal income tax returns by taking the adjusted gross income listed on line 37 of the return, adding back to that figure any alimony deducted from the adjusted gross income for that year, and subtracting the total tax liability paid by the plaintiff as listed on line 63 of the return. We chose this method because it is illustrative of the actual net income that was available to the plaintiff to satisfy his financial obligations to the defendant under the divorce decree, including the unallocated support payments. Our calculations are not meant to be viewed as factual findings, which we cannot make; see *Zitnay* v. *Zitnay*, 90 Conn. App. 71, 81, 875 A.2d 583, cert. denied, 276 Conn. 918, 888 A.2d 90 (2005); but merely as reflecting the undisputed evidence that was before the trial court.

[18] The court stated that the plaintiff also received "rental income from his property at 300 Post Road in Westport." This is the only finding by the court of any potential additional income source other than self-employment, but the court does not state the amount of the purported rental income. Form 8582 attached to the plaintiff's 2016 federal tax return lists the net annual rental income from the Post Road property as only $9808. The plaintiff's 2018 financial affidavit, credited by the court, lists no amount of income derived from rental and income producing property. In any event, this relatively small amount of additional income does not alter our analysis.

[19] The plaintiff raises and briefs as an additional claim on appeal that the court improperly concluded that the requirement in the parties' agreement that he pay 10 percent interest on any outstanding balance if he failed to make timely installment payments toward the lump sum property award was not a penalty that was void as against public policy. Because we reverse the court's decision finding the plaintiff in contempt for failing to make the lump sum property installment payments and having determined that a recalculation is needed regarding the total of any arrearage owed to the defendant, it is unnecessary to resolve any present challenge to the court's application of the 10 percent interest provision. Because it is unclear whether that issue likely is to arise again on remand, we decline to address the issue at this time.