******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CAROL WALZER *v.* ROY WALZER
## (AC 44313)

Alvord, Prescott and Clark, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's motion for contempt and ordering the sale of certain real property, namely, the former marital home. The parties' separation agreement, which was incorporated into the judgment of dissolution, provided, inter alia, that the defendant would pay to the plaintiff a property settlement of $2,580,000, in installments, to be secured with a mortgage deed in favor of the plaintiff against the former marital home. The plaintiff alleged that the defendant had failed to make certain of the installment payments. *Held*:

1. The trial court did not abuse its discretion in finding the defendant in contempt; the defendant conceded that he had defaulted on the payment obligations set forth in the separation agreement, stipulated to the amount owed, offered no evidence to support a finding that he was unable to comply with his payment obligations, and submitted a financial affidavit showing significant real and personal property assets that could be liquidated or financed to satisfy his payment obligations, thus, the court properly found that the defendant's failure to pay was wilful.

2. The defendant could not prevail on his claim that the trial court improperly ordered the sale of the former marital home: the court did not lack jurisdiction to enter the order as it did not alter the terms of the judgment of dissolution but, instead, fashioned a remedy appropriate to protect the integrity of the original judgment, as the separation agreement unambiguously tied the plaintiff's interest in the former marital home to the defendant's payment obligations; moreover, during the hearing on the plaintiff's motion for contempt, the defendant's counsel did not object to the plaintiff's request that the former marital home be sold; furthermore, the court's remedial orders setting the terms of the sale, including that the defendant sell the home with the assistance of a real estate broker, were justified and appropriately tailored to the defendant's violations and did not violate his right to due process, as the defendant had previously taken two years to attempt to sell the property, opposed selling it with a licensed real estate broker and listed it for a sale price that was significantly higher than its fair market value.

Argued November 17, 2021—officially released January 4, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the court, *Danaher, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Shaban, J.*, granted the plaintiff's motion for contempt and entered a remedial order, and the defendant appealed to this court. *Affirmed*.

*Roy S. Walzer*, self-represented, the appellant (defendant).

*Stephanie M. Weaver*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this marital dissolution action, the self-represented defendant,[1] Roy Walzer, appeals from the trial court's postdissolution judgment in favor of the plaintiff, Carol Walzer, finding the defendant in contempt. On appeal, the defendant claims that the court improperly (1) found that his admitted failure to make property settlement payments to the plaintiff in accordance with the dissolution judgment was wilful, and (2) ordered the sale of the former marital home.[2] We affirm the judgment of the court.

The following facts, as found by the court or as stipulated by the parties, and procedural history are relevant to this appeal. The marriage of the parties was dissolved by the court, *Danaher, J.*, on February 19, 2014. The parties' separation agreement (agreement), executed on the same date, was incorporated into the judgment of dissolution. Article II of the agreement provides in part that the defendant would retain title to the real property located at 141 5 1/2 Mile Road in Goshen. Article IV of the agreement, titled "Cash to the [Plaintiff]," provides: "4. The [defendant] shall pay to the [plaintiff] as additional property settlement, Two Million, Five-Hundred Eighty Thousand ($2,580,000) Dollars, in installments as follows:

"4.1 One million dollars ($1,000,000) during calendar year 2014 as follows:

"1.) One hundred fifty thousand dollars ($150,000) on or before March 1, 2014;

"2.) Two hundred fifty thousand dollars ($250,000) on or before June 1, 2014;

"3.) Three hundred thousand dollars ($300,000) on or before September 30, 2014;

"4.) Three hundred thousand dollars ($300,000) on or before December 31, 2014;

"4.2 One Million, Five-Hundred and Eighty Thousand ($1,580,000) Dollars payable in quarterly installments over ten years beginning in 2015 as follows: On or before February 15, 2015, and every quarter of a year thereafter (on May 15, August 15, and November 15) for calendar years 2015, 2016, 2017, and 2018 the [defendant] shall pay to the [plaintiff] quarterly installments of forty two thousand five hundred dollars ($42,500) totaling $170,000 each year to the [plaintiff]. On or before February 15 and every quarter of a year thereafter (on May 15, August 15, and November 15) for calendar years 2019, 2020, 2021, 2022, 2023 and 2024, the [defendant] shall pay to the [plaintiff] quarterly installments of thirty seven thousand five hundred dollars ($37,500) totaling $150,000 each year to the [plaintiff].

"4.3 Said two million five hundred eighty thousand dollars ($2,580,000) shall be secured with a mortgage

deed in the amount of two million five hundred eighty thousand dollars as provided in paragraph 4.1 above in favor of the [plaintiff] against the [defendant's] real property located at 141 5 1/2 Mile Road, Goshen, Connecticut [former marital home]. Said amount owed by the [defendant] to the [plaintiff] shall bear no interest. The [defendant] shall provide the [plaintiff] with legally sufficient evidence that he has title to said real property located at 141 5 1/2 Mile Road, Goshen, and that said real property bears no encumbrances other than the presently existing first mortgage in the amount of three million dollars owed to Hudson City Savings Bank. The [plaintiff] shall provide the [defendant] a yearly release for the amount that has been paid off by the [defendant]. If the [defendant] sells said real property at 141 5 1/2 Mile Road, Goshen, or otherwise wishes to substitute security to the [plaintiff] for his obligation herein, he shall provide sufficient substitute security to the [plaintiff] for any unpaid balance at that time."

On January 21, 2020, the plaintiff filed a motion for contempt. On August 19, 2020, the plaintiff filed a supplemental motion for contempt,[3] alleging that the defendant had failed to make property settlement payments as set forth in article IV of the agreement. Specifically, the plaintiff alleged that the defendant owed an arrearage of $10,000 at the time of her January 21, 2020 motion for contempt and that the defendant had not made any of the quarterly payments due on February 15, May 15, and August 15, 2020. With respect to the former marital home, the plaintiff alleged that it was the subject of two foreclosure actions. The plaintiff represented that the defendant's counsel had indicated that the former marital home would be placed on the market for sale but that it was off the market. The plaintiff maintained that the defendant had overpriced the home when listing it in the past.

The plaintiff requested that the court find the defendant in contempt, order the defendant to pay all arrearages and current amounts owing, and order the former marital home be placed on the market for sale with a licensed broker and with a "realistic" listing price commensurate with other listings in the area. She further requested that, in the event an agreement establishing the listing price could not be reached, the listing broker mutually selected should set the price. The plaintiff requested sufficient substitute security for the amounts owed her under the dissolution judgment and sought attorney's fees.

On September 1, 2020, the court, *Shaban, J.*, held a hearing at which the parties were both represented by counsel. The defendant submitted a financial affidavit dated September 1, 2020. On September 28, 2020, the court issued its memorandum of decision. The court first found, in accordance with the parties' stipulation offered at the hearing, that the defendant owed an

arrearage of $112,000.[4] The court then recited the following additional facts, to which the parties had stipulated. "The property distribution payments due the plaintiff were secured by a lien on the parties' marital home . . . . The fair market value of the property is estimated to be $11,000,000. At the time of the agreement, there was a mortgage encumbering the property that now has a balance due of approximately $3,000,000. Following the mortgage is the plaintiff's lien securing the property settlement payments. The balance of the lien is presently $740,000. Subsequent to the filing of the plaintiff's lien, the defendant secured a second mortgage on the premises for approximately $3,000,000. Both mortgages are now under foreclosure. From 2018 to February, 2020, the defendant marketed the property for sale through a broker. The property had been listed at a price of $13,900,000. The defendant is now attempting to sell the property himself."

The court noted that, during the hearing, the defendant requested permission to market the property without professional assistance through November 1, 2020, and that, if he were unable to find a buyer, requested that he then be permitted to choose a broker and a " 'reasonable' " selling price. With respect to the listing price, the court referenced the defendant's position that "the unique premium nature of the property is such that a comparative analysis could not realistically be done by a broker." (Internal quotation marks omitted.) The court also noted the defendant's representation that there remained sufficient equity in the property to secure the payments due to the plaintiff and his offer to pay interest on any amount in arrearage.

The court found by clear and convincing evidence that the defendant had wilfully failed to make the payments due. It further found that the order was clear and unambiguous. Thus, the court found the defendant in contempt.

The court reviewed the defendant's financial affidavit, which revealed that the defendant had "significant real and personal property assets that could be used to make payment of the amounts due either through financing or liquidation." Specifically, the court identified the defendant's full ownership in Litchfield Equities, Ltd., which owns two properties valued at $600,000 and $550,000 with no encumbrances. The court further noted that the defendant had identified on his financial affidavit personal property assets valued at $468,775, including an art collection, Oriental rugs, antiques, a wine cellar, furniture, tools, equipment, and miscellaneous items.

On the basis of the foregoing, the court ordered the defendant to bring current all payments due on or before November 15, 2020. The court ordered the former marital home "be immediately listed for sale through a mutually agreed upon licensed real estate

broker. In the event the parties cannot agree on a broker, each shall select a broker of their choosing and the two brokers shall choose a third broker who shall market the property. The selection of the broker and the execution of a listing agreement shall be done within ten days of this order. The list price shall be set by the broker and the parties shall thereafter abide by the recommendations of the broker as to the frequency and amount of any alterations in the list price for the property. Any offer for purchase within 5 percent . . . of the list price shall be accepted by the parties."[5] This appeal followed.

## I

We first address the defendant's claim that the trial court improperly granted the plaintiff's motion for contempt. Specifically, he contends that no evidence was presented that his failure to make property settlement payments in accordance with the dissolution judgment was wilful. The plaintiff responds that the record before the court, including the defendant's financial affidavit, which showed significant assets at his disposal and available to satisfy the judgment, was sufficient for the court to find that his nonpayment was wilful. We agree with the plaintiff.

The applicable principles of law and standard of review are well settled. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Our review of a trial court's judgment of civil contempt involves a two part inquiry. [W]e first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Citation omitted; internal quotation marks omitted.) *Giordano* v. *Giordano*, 203 Conn. App. 652, 656–57, 249 A.3d 363 (2021).

On appeal, the defendant does not challenge the court's conclusion that the order was clear and unambiguous, but he claims that the court improperly determined that his noncompliance with that order was wilful. Specifically, he argues that "[i]t is clear upon the facts of [his] financial affidavit that he had neither the income nor the liquid funds at the present time to pay the plaintiff the cash installments in accordance with the terms contained in the judgment," and that "[n]o evidence was presented that [his] failure to pay was wilful nor was wilfulness stipulated." He contends that his assets are illiquid and that "[n]o reasonable inference can be drawn or assumption made, therefore, on the issue of wilfulness or [his] prior and continuing efforts to assemble the funds to comply with the payment schedule in the agreement." We are not persuaded.

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [I]nability to pay is a defense to a contempt motion. However, the burden of proving inability to pay rests upon the obligor." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 187 Conn. App. 375, 393, 202 A.3d 458 (2019). "Whether [a party has] established his inability to pay the order by credible evidence is a question of fact. Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, 294 Conn. 384, 397–98, 985 A.2d 319 (2009).

In the present case, the defendant conceded that he had defaulted on the payment obligations set forth in article IV of the agreement, and he stipulated to the amount of the arrearage owed. The defendant offered no evidence at the hearing to support a finding that he was unable to comply with his payment obligations. To the contrary, as the trial court found, the defendant submitted a financial affidavit showing "significant real and personal property assets that could be used to make payment of the amounts due either through financing or liquidation." These assets included ownership of two properties valued at $600,000 and $550,000 with no encumbrances, and $468,775 in personal property including an art collection, Oriental rugs, antiques, a wine cellar, furniture, tools, equipment, and miscellaneous items.[6] In sum, the defendant's financial affidavit, which showed ample assets that could be liquidated or financed to satisfy his payment obligations, provided a basis for the court reasonably to infer that his failure

to pay was wilful. His failure to utilize those assets to meet his court-ordered dissolution obligations does not insulate him from a finding of contempt.[7] Accordingly, we conclude that the court properly found that the defendant's failure to pay was wilful and, consequently, did not abuse its discretion in finding the plaintiff in contempt.[8]

## II

We next address the defendant's claim that the court improperly ordered the sale of the former marital home. He offers several arguments related to this claim. First, he argues that the court lacked jurisdiction to enter an order relating to the sale of the former marital home, on the basis that the order constituted an improper modification of the final property division. Second, he maintains that the court abused its discretion in issuing orders related to the sale of the former marital home. Specifically, he contends that "[t]he trial court had the discretion to order the defendant to pay the arrearage by a date certain which the trial court did order. But the court went far beyond that by ordering, in addition, that the defendant sell his residence through a real estate broker, inserting the plaintiff into the real estate broker selection process [and] the listing price determination process and ordering that a mathematically determined offer be accepted irrespective of the terms of the offer beyond price." Third, he argues that the terms of the sale ordered by the court violate his right to due process. We disagree.

We first set forth relevant principles of law and our standard of review. It is well settled that "[t]he court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . .

"Although the court does not have the authority to modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . [I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring

the parties' timely compliance therewith. . . .

"If a party's motion can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation. . . . Similarly, when determining whether the new order is a modification, we examine the practical effect of the ruling on the original order. . . . In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Lawrence* v. *Cords*, 165 Conn. App. 473, 482–85, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016).

Relatedly, "[f]aced with a party in contempt of court, it is within the court's province to fashion appropriate remedial orders. Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Ciottone* v. *Ciottone*, 154 Conn. App. 780, 793–94, 107 A.3d 1004 (2015).

The defendant argues that because "[t]here is no provision in the judgment requiring [him] to sell his residence and the associated real property" but, rather, a payment schedule and "descending security provision," the court's order requiring the sale of the property and setting the terms of the sale are "not the mere technical implementation of the judgment." We conclude that the court's decision on the plaintiff's motion for contempt did not alter the terms of the judgment of dissolution but rather fashioned a remedy appropriate to protect the integrity of its original judgment.

The agreement incorporated into the judgment of dissolution provides that the amount owed the plaintiff under articles 4.1 and 4.2 of the agreement shall be "secured with a mortgage deed in the amount of two million five hundred eighty thousand dollars as provided in paragraph 4.1 above in favor of the [plaintiff] against the [defendant's] real property located at 141 5

1/2 Mile Road, Goshen, Connecticut." The parties, in agreeing to the provision, unambiguously tied the plaintiff's interest in the property to the defendant's payment obligations. The effect of this provision is to ensure that the plaintiff receives the installment payments owed to her under the terms of the dissolution judgment. In the event of the defendant's default in his installment payment obligation, the sale of the property is exactly what the agreement contemplated, in that the defendant's obligation could be satisfied either through foreclosure of the mortgage or through the court's contempt power.

Despite the first motion for contempt having been filed in January, 2020, the defendant remained in complete default on his quarterly installment payments more than eight months later at the time of the hearing in September, 2020. Thus, the defendant's continued default rendered strict adherence to the terms of the agreement impossible; see *Santoro* v. *Santoro*, 70 Conn. App. 212, 218, 797 A.2d 592 (2002) ("noncompliance on the part of the parties made strict adherence to the terms of the [decree] impossible" (internal quotation marks omitted)); and the court appropriately fashioned the remedy of sale to protect the integrity of the court-ordered dissolution agreement.

Moreover, we note that the defendant's counsel did not object, during the hearing on the motion for contempt, to the plaintiff's request that the former marital home be sold. To the contrary, he requested only that the court allow additional time for the defendant to continue to market the property himself. Specifically, the defendant's counsel proposed: "[The defendant] just . . . wants eight more weeks to try to market this. And, then, he would like to be able to choose the broker and choose a reasonable selling price because, after all, [the plaintiff] is gonna get the cash that she gets in the settlement agreement, but he's trying to manage what he was left after the divorce. And, Your Honor, if—we will report to [the plaintiff] on November 1, who the broker is and the . . . listing price. And if [the plaintiff is] not in agreement with it we can . . . say we're gonna come back to court and argue the listing price and the broker." Thus, the defendant cannot now be heard to complain that the court erred in ordering the former marital home sold. See *Scalora* v. *Scalora*, 189 Conn. App. 703, 732–33, 209 A.3d 1 (2019) (declining to review claim that court erred in crafting arrearage payment schedule without obtaining evidence of ability to pay where parties had effectively invited court to focus on merits of motions without reference to current finances, as parties had not filed financial affidavits nor objected at time of orders that court had not considered their financial conditions).

As to setting the terms of the sale, we conclude that the court's remedial orders were justified and appropri-

ately tailored to the violations and did not violate the defendant's right to due process. The record before the court included stipulations demonstrating the defendant's two year long undertaking to sell the property, his opposition to listing it with a licensed broker, and his listing of the property for sale at a price significantly higher than its fair market value, all of which provided a sufficient basis for the court to conclude that its remedial order needed to address the terms of the sale to ensure that the plaintiff would receive the sums owed to her. See *Behrns* v. *Behrns*, 124 Conn. App. 794, 821, 6 A.3d 184 (2010) (court's order prohibiting defendant from encumbering assets without approval of court was not abuse of discretion where it was clear court believed order was necessary to secure defendant's debt to plaintiff); see also *Ciottone* v. *Ciottone*, supra, 154 Conn. App. 793 (rejecting claim that remedial orders deprived plaintiff of due process where orders were justified and appropriately tailored to violations). Accordingly, we conclude that the court did not improperly order the sale of the former marital home, abuse its discretion, or violate the defendant's right to due process.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant is self-represented on appeal, he was represented by counsel at the time of the contempt hearing before the trial court.

[2] In his principal appellate brief, the defendant asserts four separate claims of error. For ease of discussion, we address certain claims together and in a different order than they appear in the defendant's appellate brief.

[3] In its memorandum of decision, the trial court noted that "[t]he second motion was necessary due to the coronavirus pandemic that closed the court in March, 2020, before the matter could be heard. The courts remained closed to normal operations for several months thereafter."

[4] In their appellate briefs, both parties represent that the defendant owed the plaintiff $112,500 at the time of the contempt hearing. Specifically, the defendant states: "As of August 19, 2020, the date upon which plaintiff filed the motion for contempt which is the subject of the instant appeal, the defendant owed to plaintiff $112,500, under the payment schedule contained in the agreement." The plaintiff states: "At the time of the hearing, three payments in 2020 for $37,500 were due, for a total of $112,500." Neither party, however, challenges on appeal the court's finding that the parties had stipulated to an amount owed of $112,000.

[5] The court also awarded the plaintiff attorney's fees and costs in the amount of $1009.30, and ordered the defendant to pay such amount on or before November 15, 2020.

[6] We also note that the defendant's financial affidavit, filed on the date of the contempt hearing, reported a net weekly income of $2348.80. During oral argument before this court, the defendant was questioned regarding whether he was receiving income of approximately $2400 weekly at the time of the contempt hearing, and he responded that he was.

[7] In his reply brief, the defendant argues: "Had plaintiff . . . made any effort whatsoever to support her claim of willfulness, by means of inquiry or evidence, or had the court below made any inquiry, there would be a record below. For example, gross income does not equal available funds to service defendant's . . . payment schedule and assets do not equal the ability to finance, which requires sufficient income to carry the debt. No such record exists. Without such record, there is no clear and convincing evidence upon which to base a finding of willfulness." Our Supreme Court previously has rejected arguments that the trial court was obligated to comb through the financial situation of the nonpaying party as being in conflict with "the well settled law of this state requiring the contemnor to demonstrate his or her inability to comply with a payment order." *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, supra, 294 Conn. 398.

[8] During oral argument before this court, the defendant represented that

he neither had complied with the court's contempt remedial order that he bring current his payments by November 15, 2020, nor had filed a motion for a stay of that order. The defendant additionally represented that, although he had listed the former marital home for sale following the court's issuance of its memorandum of decision, the selection of the broker and the list price were both his decision. Although the defendant's actions subsequent to the court's issuance of its memorandum of decision on the plaintiff's motion for contempt are not before us in this appeal, we note that the defendant's admitted and continued failure to comply with the court's order may subject him to further remedial orders should the plaintiff elect to file a subsequent motion for contempt with the trial court.

---