******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WENDY M. MAZZA *v.* SAMUEL T. MAZZA, JR.
(AC 44984)

Elgo, Suarez and DiPentima, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's postjudgment motion for contempt. The plaintiff alleged that the defendant violated a provision of the parties' separation agreement, which had been incorporated into the judgment of dissolution, requiring the defendant to pay to the plaintiff 50 percent of "all awards" that the defendant received from a workers' compensation proceeding that had been initiated when the defendant suffered a work-related injury during their marriage. Following the judgment of dissolution, the defendant entered into a stipulation that resolved the workers' compensation proceeding. The defendant thereafter failed to pay the plaintiff 50 percent of the workers' compensation award, totaling approximately $250,000, which the defendant received pursuant to the stipulation. The defendant, however, used a portion of the workers' compensation award to purchase a property in Kent. Having determined that the separation agreement clearly and unambiguously defined the term "all awards" to include the money the defendant received as part of the stipulation, the trial court granted the motion for contempt and ordered the defendant either to pay the plaintiff the money to which she was entitled or, as alternative relief, to transfer to the plaintiff the title to the Kent property. The defendant was ordered not to transfer, mortgage or in any way diminish the value of the Kent property prior to his full compliance with the court's contempt order. On the defendant's appeal to this court, *held*:

1. The trial court properly granted the plaintiff's motion for contempt, that court having correctly determined that the parties' separation agreement was unambiguous in that the phrase "all awards" properly included the defendant's compensation payment he received as a result of the stipulation: although the parties' settlement agreement did not define the phrase "all awards," the plain and ordinary meaning of those terms clearly encompassed the defendant's $250,000 workers' compensation payment, the parties' use of the term "all" in the agreement indicated that their intention was that the plaintiff would be entitled to a portion of each and every workers' compensation payment, and the defendant's claim that the parties' did not contemplate dividing workers' compensation awards intended for medical expenses was unavailing, as this interpretation had no basis in the plain language of the agreement insofar as the parties did not place any limitation as to which portions of a workers' compensation award the defendant must pay to the plaintiff, and there was no language in the agreement permitting the defendant to unilaterally withhold from his workers' compensation payment funds that were attributable to medical expenses; moreover, the distinction the defendant attempted to draw between an award issued by an administrative law judge pursuant to statute (§ 31-300) and a voluntary agreement pursuant to statute (§ 31-296) was without any basis, as there was no reference to any statutory provisions in the separation agreement and, thus, no indication that the parties relied on the meaning of "award," as that term is used in any statute.

2. The trial court did not abuse its discretion in determining that the defendant wilfully violated the separation agreement, the record having sufficiently demonstrated that the defendant agreed to pay to the plaintiff 50 percent of all of his workers' compensation awards, but, upon receipt of his workers' compensation payment, he used the funds for his own purposes rather than complying with the separation agreement; in the present case, although the defendant claimed that his conduct was not wilful because he relied on the advice of his worker's compensation counsel, the trial court expressly found that it did not find the defendant's testimony credible, and this court would not reconsider on appeal the defendant's testimony at the contempt hearing, and, even if this court

credited such testimony, his testimony failed to establish that he relied on counsel's advice or that counsel advised him not to pay any portion of the workers' compensation award to the plaintiff; furthermore, the defendant offered no explanation as to why he previously paid the plaintiff 50 percent of a workers' compensation award of $10,000, but failed to remit any of the $250,000 payment at issue.

3. The trial court did not improperly order alternative relief regarding the Kent property in granting the plaintiff's motion for contempt, as the ordered relief was a proper exercise of its remedial contempt authority to effectuate the terms of the judgment of dissolution: because the Kent property was purchased by the defendant postdissolution with the funds from the award and thus was not contemplated by the property provision of the separation agreement, the trial court had the authority to include the Kent property in its contempt orders as the plaintiff did not explicitly seek to modify the parties' property assignment but, instead, sought to enforce the practical effect of the original dissolution judgment; moreover, the evidence demonstrated that the defendant did not have the available liquid funds to pay the plaintiff, and, having transformed the funds from the workers' compensation award intended for the plaintiff into nonliquid assets, including the Kent property, the defendant forced the court to consider alternative remedies in order to protect the integrity and purpose of the settlement agreement, and the court left the defendant with the possibility that he can pay the plaintiff the money to which she is entitled instead of transferring the Kent property.

Argued May 9—officially released November 1, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Winslow, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Truglia, J.*, granted the plaintiff's motion for contempt, and the defendant appealed to this court. *Affirmed.*

*Alexander Copp*, with whom was *Neil R. Marcus*, for the appellant (defendant).

*Kathy Boufford*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Samuel T. Mazza, Jr., appeals from the judgment of the trial court granting the post-judgment motion for contempt filed by the plaintiff, Wendy M. Mazza. On appeal, the defendant claims that the court improperly (1) granted the plaintiff's motion for contempt and (2) ordered alternative relief concerning the defendant's real property. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The parties married in August, 2003. In December, 2003, the defendant suffered an injury when a concrete tank fell onto his legs while he was performing work for his employer, M & M Precast Corporation, causing him to suffer a permanent loss of motion to his right leg and back. The defendant's injury spawned a workers' compensation proceeding, and the defendant thereafter received workers' compensation payments throughout the parties' marriage.

On February 11, 2015, the court dissolved the marriage of the parties. The court incorporated into the judgment of dissolution the parties' separation agreement (agreement), which was executed on the same date. The agreement is a standard form JD-FM-172 (Rev. 7-10) that the self-represented parties completed by writing their agreed terms in the designated sections. The agreement resolved all of their then outstanding issues, including custody, visitation, child support, health insurance coverage, childcare costs, and postmajority education support with respect to their four minor children. In § 13 of the agreement, titled "Other," the parties agreed that the "plaintiff will receive 50 [percent] of all awards from [the] defendant's workers' compensation suit paid prior to [their] children's college graduation." The court held a hearing at which it canvassed the parties regarding their entire agreement, specifically including § 13, after which the court found that the entire agreement was fair and equitable. The defendant subsequently received a workers' compensation payment for $10,000, of which he remitted 50 percent to the plaintiff.[1]

On March 8, 2019, the defendant entered into a "Stipulation for Agreement and Award" (stipulation) that resolved his workers' compensation proceeding. Pursuant to the stipulation, the defendant's employer agreed to pay $250,000 to the defendant as a "full, final and complete settlement, adjustment, accord and satisfaction of all claims which [the defendant] might otherwise have against [his employer] . . . and is to be made and accepted in lieu of all other compensation payments . . . ." The stipulation further provides that the parties' "purpose and intent . . . [was] to resolve every and all claims for all injuries and conditions during, and related to, the [defendant's] employment with [his]

employer under the Workers' Compensation Act [(act), General Statutes § 31-275 et seq.]." Within the next few months, the defendant received a check for approximately $200,000 pursuant to the stipulation, which accounted for a deduction of $50,000 for attorney's fees and costs.[2] On his receipt of this $200,000 workers' compensation payment, the defendant did not remit 50 percent to the plaintiff. Instead, the defendant used the $200,000 workers' compensation payment to purchase and to renovate a residence in Kent (Kent property), to pay taxes and rent, to purchase a camper, to give his mother a monetary gift, and to pay the plaintiff outstanding alimony and child support. Both parties subsequently retained counsel in the present case.

On December 23, 2020, the plaintiff filed a motion for contempt. The plaintiff asserted that the defendant wilfully violated § 13 of the agreement because he failed to remit to her 50 percent of the $200,000 workers' compensation payment. As for relief, the plaintiff's motion for contempt sought 50 percent of the defendant's $200,000 workers' compensation payment, attorney's fees incurred in the prosecution of the motion for contempt, and "any further or alternate relief the court deems fair and equitable."

On August 19 and September 14, 2021, the court held an evidentiary hearing on the plaintiff's motion for contempt. Both the plaintiff and the defendant testified at the hearing regarding their formation and understanding of the agreement. Each party submitted a memorandum of law in which they advanced disparate interpretations of § 13 of the agreement and its application to the $200,000 workers' compensation payment. The defendant argued that the phrase "all awards from [the] defendant's workers' compensation suit" did not include his $200,000 workers' compensation payment because (1) he did not completely understand the terms of the agreement when he signed it, (2) the $200,000 workers' compensation payment was much larger than he anticipated when he signed the agreement, (3) the parties never contemplated that the plaintiff would be entitled to a workers' compensation payment attributable to his future medical expenses, (4) the time for him to provide the funds to the plaintiff had not yet expired, and (5) there is a legal distinction in the act between an "award" and an "approved stipulation." The plaintiff conversely argued that the agreement unambiguously provides that she was entitled to 50 percent of "all" of the workers' compensation awards that the defendant received, which clearly included the $200,000 workers' compensation payment that the defendant received pursuant to his workers' compensation stipulation.

On September 15, 2021, the court issued an order granting the plaintiff's motion for contempt. The court rejected each of the defendant's arguments and held

that "the plaintiff has carried her burden of proof by clear and convincing evidence that the defendant has wilfully failed to obey a clear court order without justification or excuse." The court reasoned that it "does not find the language of the agreement ambiguous; there is a clear court order that the 'plaintiff will receive 50 [percent] of all awards from [the] defendant's workers' compensation suit paid prior to [their] children's graduation.' " The court further held that "[t]he defendant received [the $200,000 workers' compensation payment] in March, 2019, but paid no portion to the plaintiff. There is no question . . . that the defendant did not consider a legal distinction between settlements and awards when he received the [$200,000 workers' compensation payment] and chose not to pay them to the plaintiff."

Consequently, the court issued a three part order of relief. First, the court ordered "the defendant to pay $101,300 to the plaintiff on or before October 15, 2021," and that the defendant shall "reimburse the plaintiff for a portion of her attorney's fees incurred in prosecuting this action in the amount of $7500." Second, the court ordered by way of "alternative" relief that the defendant convey by warranty deed to the plaintiff all of his right, title, and interest to his Kent property on or before October 15, 2021, and that the defendant was not to transfer, mortgage, or in any way diminish the value of the Kent property prior to his full compliance with the court's contempt order. Third, the court ordered that "the plaintiff may secure these orders by immediate judgment lien in accordance with Chapter 906 of the General Statutes." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly granted the plaintiff's motion for contempt. Specifically, the defendant argues that the court incorrectly determined that the phrase in the agreement that "all awards from [the] defendant's workers' compensation suit" clearly and unambiguously included his $200,000 workers' compensation payment. The defendant also argues that the court abused its discretion by determining that he wilfully violated the agreement.[3] We disagree.

We first set forth the standard of review and legal principles relevant to our resolution of the defendant's first claim. Our standard of review is mixed. We employ plenary review to the question of whether the court properly determined that the agreement incorporated into the judgment of dissolution was unambiguous. See *Birkhold* v. *Birkhold*, 343 Conn. 786, 811, 276 A.3d 414 (2022). We employ the abuse of discretion standard to review the question of whether the court properly determined that the defendant wilfully failed to comply with the agreement. Id.

"It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive." (Internal quotation marks omitted.) Id. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Our review of a trial court's judgment of civil contempt involves a two part inquiry. [W]e first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Hall*, 335 Conn. 377, 391–92, 238 A.3d 687 (2020).

With respect to the first inquiry, "[b]ecause a separation agreement incorporated into a dissolution decree is in the nature of a contract, we note the following general principles of contract interpretation. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 792–93, 241 A.3d 717 (2020). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Casablanca* v. *Casablanca*, 190 Conn. App. 606, 617–18, 212 A.3d 1278, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019).

In the present case, § 13 of the agreement broadly provides that the "plaintiff will receive 50 [percent] of *all awards* from [the] defendant's workers' compensation suit paid prior to [their] children's college graduation."[4] (Emphasis added.) We agree with the court that

the phrase "all awards" unambiguously was intended to apply to the $200,000 workers' compensation payment he received pursuant to the stipulation. Although the agreement does not define the phrase "all awards," the plain and ordinary meaning of those terms clearly encompasses the defendant's $200,000 workers' compensation payment. See, e.g., Black's Law Dictionary (11th Ed. 2019) p. 169 (defining "award" as "[a] final judgment or decision"); Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 86 (defining "award" as "a judgment or final decision" and "something that is conferred or bestowed esp[ecially] on the basis of merit or need"); Merriam-Webster's Collegiate Dictionary, supra, p. 31 (defining "all" as "every member or individual component of" and "as much as possible"). Here, the defendant's $200,000 workers' compensation payment finally resolved the workers' compensation proceeding. The stipulation provides that the $200,000 workers' compensation payment was a "full, final and complete settlement, adjustment, accord and satisfaction of all claims" that the defendant had and resulted in the defendant receiving one final award in lieu of future awards. The parties' use of the term "all" in the agreement indicates that their intention was that the plaintiff would be entitled to a portion of each and every workers' compensation payment, including the $200,000 workers' compensation payment. In fact, the stipulation itself is titled "Stipulation for Agreement and *Award*," which further indicates that the $200,000 workers' compensation payment made pursuant to the stipulation is an award.[5] (Emphasis added.) Accordingly, it is clear from the plain language of the agreement that the parties intended that the plaintiff was to receive 50 percent of the defendant's $200,000 workers' compensation payment because that payment was an award.

The defendant's interpretation to the contrary is not a reasonable one. The defendant argues that the parties did not intend that the term "all awards" would include all funds received by the defendant from his workers' compensation proceeding. Rather, the defendant asserts that it was the intent of the parties that the plaintiff *would not* be entitled to funds from the workers' compensation proceeding "intended for surgeries, medical care and medication," but that she *would be* entitled to funds attributable to an imprecise category of funds[6] generally, including loss of use, lost wages, and partial disability. Stated simply, the defendant's interpretation has no basis in the plain language of the agreement because the parties did not place any limitation as to which portions of a workers' compensation award the defendant must pay to the plaintiff. There is no language in the agreement stating that the defendant has the right to unilaterally withhold from his workers' compensation payments funds that are attributable to medical expenses. Indeed, the plain language of the agreement states the opposite—that the plaintiff

is entitled to 50 percent of *all awards*. If the parties intended to limit the plaintiff's entitlement to certain portions of the defendant's awards, they certainly could have done so.[7] We will not graft such a limitation into the agreement so as to support the defendant's position. See *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 200, 112 A.3d 144 (2015) ("'[a]lthough parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement' ").

The defendant also contends that the stipulation was not an "award" as that term is used within the act. The defendant attempts to draw a distinction between a workers' compensation "award" issued by an administrative law judge pursuant to General Statutes § 31-300, and a "voluntary agreement" pursuant to General Statutes § 31-296. We are not persuaded. There is no reference to the act in the agreement and, thus, no indication that the parties relied on the meaning of "award" as that term is used in the act. As the defendant recognizes in his appellate briefs, "[t]his is not to say that the parties intended the word 'awards' to be construed exactly as that term is used in the . . . [a]ct" and that, "[a]t the time of the divorce, both were unsophisticated, pro se parties who were plainly not relying on any hyper specific statutory definition, but merely using the term as they had come to understand it . . . ."[8] In sum, we conclude that the court properly determined that the agreement was unambiguous.[9]

We next turn to the second inquiry, which requires that the defendant's violation of the agreement incorporated into the judgment of dissolution was wilful. "Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties." (Internal quotation marks omitted.) *Hall* v. *Hall*, supra, 335 Conn. 392. As stated previously, we review the court's determination that the defendant's violation of the agreement was wilful under the abuse of discretion standard. *Birkhold* v. *Birkhold*, supra, 343 Conn. 811. "Under the abuse of discretion standard, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *L. W.* v. *M. W.*, 208 Conn. App. 497, 511, 266 A.3d 189 (2021).

The defendant contends that his violation of the agreement was not wilful because he relied on the advice of his workers' compensation attorney, Guy DePaul.[10] Particularly, at the September 14, 2021 hearing

on the motion for contempt, the defendant testified that it was his understanding that the plaintiff would be entitled only to "awards," not "benefits," pursuant to the agreement. At the hearing, the defendant was asked by his attorney "why . . . [he] distinguish[ed] in [his] testimony between benefits and awards?" The defendant responded, "[t]hat's what I was always told," and "[t]hat's what had been explained to me by [DePaul] . . . ." The defendant then was asked whether he and "DePaul discussed how [his] case would be presented and disposed of ultimately; your workers' comp[ensation] case," and the defendant responded, "[y]es." The defendant contends that this testimony establishes that the court abused its discretion in finding his breach of the agreement was wilful. We do not agree.

The defendant's argument amounts to an invitation for this court to reconsider on appeal his testimony at the hearing. We decline to do so because the trial court is "the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [When] there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 359, 273 A.3d 680 (2022). This is particularly true because the court expressly found that it did "not find the defendant's testimony credible on any of [the] points" he raised.

Even if the court had credited the defendant's testimony, his testimony fails to establish that DePaul advised him not to pay any portion of his $200,000 workers' compensation payment to the plaintiff *or* that the defendant withheld his settlement in reliance on the advice of DePaul. Instead, the defendant's testimony merely establishes that DePaul informed him that there was some distinction between "awards" and "benefits" in relation to his workers' compensation proceeding. See *Hall* v. *Hall*, supra, 335 Conn. 391–93 (rejecting claim that plaintiff's actions were not wilful because he relied on advice of his counsel when plaintiff failed to identify any testimony or evidence that counsel advised him to act in violation of agreement and that he relied on that advice). An additional problem with the defendant's argument is that he did not pay the plaintiff *any* portion of his $200,000 workers' compensation payment, regardless of whether he classified part of it as an "award" or a "benefit." If the defendant was uncertain as to whether his $200,000 workers' compensation payment was subject to distribution to the plaintiff, his obligation was to seek the guidance of the court, not to unilaterally withhold all of the funds. See *Becue* v. *Becue*, 185 Conn. App. 812, 827, 198 A.3d 601 (2018) ("'[W]e will not countenance one party's interpreting the term and undertaking unilateral action to the detriment of the other party. In such a circumstance, the

party seeking to alter payments must seek the assistance of the court.' ''), cert. denied, 331 Conn. 902, 201 A.3d 403 (2019). In fact, the defendant provided the plaintiff with 50 percent of the $10,000 workers' compensation payment that he received after the judgment of dissolution but before the stipulation. On appeal, the defendant offers no explanation as to why he paid the plaintiff 50 percent of the $10,000 workers' compensation payment but none of the $200,000 workers' compensation payment.

Additionally, the defendant fails to account for the other undisputed evidence supporting the court's wilfulness determination. When the defendant received the $200,000 workers' compensation payment, the defendant did not pay 50 percent to the plaintiff as he was required to do pursuant to § 13 of the agreement. Instead, the defendant used the funds to purchase and to renovate the Kent property, to pay taxes and rent, to purchase a camper, to give his mother a monetary gift, and to pay the plaintiff outstanding alimony and child support. In short, the defendant agreed to pay the plaintiff 50 percent of all of his workers' compensation awards, but, on his receipt of the $200,000 workers' compensation payment, he used the funds for his own purposes instead of complying with the agreement. Accordingly, we conclude that the court's determination that the defendant wilfully violated the agreement was not a "manifest abuse of discretion." (Internal quotation marks omitted.) *L. W.* v. *M. W.*, supra, 208 Conn. App. 511. In sum, we conclude that the court properly granted the plaintiff's motion for contempt.

## II

The defendant next claims that the court improperly ordered alternative relief concerning the Kent property. Specifically, the defendant argues that the court lacked the authority to award, as part of its contempt order, alternative relief: requiring the preservation, restricting the transfer, and permitting the imposition of a judgment lien on the Kent property. He argues that the court impermissibly modified the substantive terms of the property distribution as provided by the judgment of dissolution. We disagree.

At the outset, we briefly recount the facts underlying the court's award of relief in its contempt order. In § 10 of the agreement as to the "division of property" and "real property," the parties wrote "none." Nevertheless, the court, in its order granting the plaintiff's motion for contempt, ordered that the defendant pay the plaintiff $108,800 as compensation, which represented approximately 50 percent of the defendant's $200,000 workers' compensation payment and $7500 in attorney's fees. It was apparent from the evidence presented at the contempt hearing that the defendant did not have the liquid funds available to pay $108,800 to the plaintiff. Indeed, the defendant averred, in his January 21, 2021

financial affidavit, that the Kent property he purchased with funds from his $200,000 workers' compensation payment was worth $110,000. As an alternative to the transfer of funds, the court fashioned an alternative award of relief with respect to the Kent property, which had a value approximately equal to the sum owed to the plaintiff. Particularly, the court ordered, by way of alternative relief, that the defendant convey by warranty deed to the plaintiff all of his right, title and interest to the Kent property on or before October 15, 2021, and that the defendant was not to transfer, mortgage or in any way diminish the value of the Kent property prior to his full compliance with the court's contempt order. The court further ordered that "the plaintiff may secure these orders by immediate judgment lien in accordance with Chapter 906 of the General Statutes."

We next set forth the standard of review and legal principles relevant to our resolution of the defendant's second claim. "It is well settled that [t]he court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81.[11] . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final." (Footnote added; internal quotation marks omitted.) *Walzer* v. *Walzer*, 209 Conn. App. 604, 615, 268 A.3d 1187, cert. denied, 342 Conn. 907, 270 A.3d 693 (2022).

"Although the court does not have the authority to modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . [I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) Id. "If a party's motion can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation." (Internal quotation marks omitted.) Id.

"Similarly, when determining whether the new order is a modification, we examine the practical effect of the ruling on the original order. . . . In order to deter-

mine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) Id., 615–16.

It is equally well established that, when "[f]aced with a party in contempt of court, it is within the court's province to fashion appropriate remedial orders. Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) Id., 616. "[A] trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order. . . . The court has authority to order additional measures not contained in the original order if they are necessary to effectuate the original judgment." (Citations omitted; internal quotation marks omitted.) *Behrns* v. *Behrns*, 124 Conn. App. 794, 822, 6 A.3d 184 (2010).

We conclude that, after finding the defendant in contempt, the court fashioned a remedy appropriate to protect the integrity of the judgment of dissolution. The plaintiff's motion for contempt did not explicitly seek to modify the parties' property assignment. Rather, the plaintiff sought to enforce the practical effect of § 13 of the agreement incorporated into the original dissolution judgment, which provided that the plaintiff was to receive 50 percent of all the workers' compensation awards that the defendant received. The defendant, however, failed to pay the plaintiff approximately $100,000 of the $200,000 workers' compensation payment that she was owed pursuant to § 13 of the agreement. The defendant instead spent these funds for his own purposes, including the purchase of the Kent property. The evidence at the contempt hearing shows that the defendant did not have available the liquid funds to pay to the plaintiff. Having transformed those funds intended for the plaintiff into nonliquid assets such as the Kent property, the defendant himself forced the court to consider alternative remedies in order to protect the integrity and the purpose of § 13 of the agree-

ment.

Accordingly, the court had the authority to fashion "an appropriate remedy to protect the integrity of the original judgment." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 165 Conn. App. 473, 486, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016). That is precisely what the court did. The court's order of alternative relief—requiring the preservation, restricting the transfer, and permitting the imposition of a judgment lien on the Kent property valued at $110,000—ensured that the plaintiff would be compensated for the $108,800 she was owed pursuant to the agreement. Furthermore, the defendant is not necessarily required to relinquish his Kent property to the plaintiff because the court's order of relief was alternative. The court left open the possibility that the defendant can instead pay to the plaintiff the $108,800 that she is owed. Accordingly, "the court ensured that the plaintiff would receive the sum owed to her within a specified span of time one way or another." Id., 488.

Contrary to the defendant's argument, the court had the authority to include the Kent property in its contempt order despite the fact that the Kent property was not contemplated by the agreement incorporated into the judgment of dissolution.[12] The court did not modify the terms of the property distribution because the Kent property was not part of the agreement. Rather, the Kent property was purchased by the defendant with the funds from the $200,000 workers' compensation payment that was contemplated by § 13 of the agreement. A trial court "has authority to order additional measures not contained in the original order if they are necessary to effectuate the original judgment." (Internal quotation marks omitted.) *Behrns* v. *Behrns*, supra, 124 Conn. App. 822. The court's order of relief in the present case was a proper exercise of its remedial contempt authority to effectuate the terms of the judgment of dissolution. See, e.g., *Walzer* v. *Walzer*, supra, 209 Conn. App. 617 (affirming court's contempt order requiring sale of property to satisfy deficiency in defendant's default on installment payments "to protect the integrity of the court-ordered dissolution agreement"); *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 377–78, 254 A.3d 330 (2021) (affirming court's contempt order requiring plaintiff to assign portion of pension as "a mechanism to ensure, as required by the dissolution judgment, that the increased value of the pension benefit . . . 'belong[ed] to the defendant' "); *Lawrence* v. *Cords*, supra, 165 Conn. App. 485–87 (affirming court's contempt order requiring defendant either to pay plaintiff lump sum or proceeds from sale of property as "a remedy appropriate to protect the integrity of its original judgment"); *Behrns* v. *Behrns*, supra, 821–22 (affirming court's contempt order prohibiting defendant from encumbering assets without prior approval of court so as to secure defendant's debt to plaintiff).[13] In

sum, the defendant's actions rendered strict compliance with the judgment of dissolution impossible, and, thus, the court crafted an appropriate remedy to effectuate the judgment. See *Santoro* v. *Santoro*, 70 Conn. App. 212, 218, 797 A.2d 592 (2002) (" 'noncompliance on the part of the parties made strict adherence to the terms of the [decree] impossible' "). Therefore, we conclude that the court properly ordered alternative relief concerning the Kent property.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] It is unclear from the record the date on which the defendant received this $10,000 payment and the date on which he remitted 50 percent of this payment to the plaintiff.

[2] For clarity, we hereinafter refer to the payment the defendant received pursuant to the stipulation as the "$200,000 workers' compensation payment."

[3] Subsumed within his first claim, the defendant devotes one paragraph to argue that "the trial court further erred in precluding the defendant's counsel from questioning the plaintiff as to whether she was seeking 50 percent of payments for medical expenses" at the August 19, 2021 hearing on her motion for contempt. We decline to review this claim on the ground that it is inadequately briefed because it is a mere conclusion that is unsupported by citations to any legal authority. See *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 802, 256 A.3d 655 (2021) ("'mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, [are inadequately briefed]' ").

The defendant also argues in two sentences that "the trial court's award of attorney's fees was based on its finding that the defendant was in wilful contempt of a clear court order. If this court reverses the trial court's finding of contempt, it must also reverse its award of $7500 in attorney's fees to the plaintiff." In light of our conclusion that the court properly granted the plaintiff's motion for contempt, we do not address that contention.

[4] It is undisputed that the defendant received his $200,000 workers' compensation payment "prior to [their] children's college graduation."

[5] The defendant attempts to distinguish the title of the stipulation by contending that "the stipulation is titled 'Stipulation for Agreement *and Award*' because it is a stipulation that *includes* an award, but is not *only* an award." (Emphasis in original.) We are not persuaded by this semantical argument and, rather, view it as an implicit acknowledgement that the $200,000 workers' compensation payment remitted to the defendant pursuant to the stipulation was, in fact, an "award."

[6] The defendant has not consistently articulated before the trial court or before this court the portion, if any, of the $200,000 workers' compensation payment to which he believes the plaintiff is entitled. At different points before the trial court and before this court, the defendant argued that the plaintiff was entitled only to a portion of the $200,000 workers' compensation payment attributable to several differing and contrasting categories: "lost wages and partial loss of use," "loss of use, loss of wages," partial permanent disability payments, temporary partial disability payments, a partial permanent disability arrearage, missed work, or liquidated damages. Thus, the defendant's argument is undercut by his own shifting interpretation of the agreement. See *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 327, 186 A.3d 771 (plaintiff "completely undermined" her interpretation of separation agreement because she offered different interpretations during trial and appellate proceedings), cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018).

[7] On appeal, the defendant recognizes that the $250,000 sum provided for in the stipulation is not bifurcated into any categories. In particular, the stipulation provides that this sum represents "a full and final settlement of all compensation for said injuries, and for all results upon the claimant past, present and future, and for all claims for past, present and future medical, surgical, hospital and incidental expenses and all compensation which may be due . . . ."

[8] Secondarily, even if the parties agreed that the meaning of the term "award" was governed by the act, there is no definition for that term within the act. Instead, § 31-296 (a), which governs voluntary agreements, provides in relevant part that a signed and approved agreement "shall be as binding

upon both parties as an award by the administrative law judge." Thus, under the circumstances of the present case, the stipulation has the same effect as an "award" as that term is used in the act. See R. Carter et al., 19A Connecticut Practice Series: Workers' Compensation (2008 Ed.) § 28:18, p. 146 ("[t]he settlement agreement is an award by stipulation, like a stipulated judgment, and is usually referred to as a 'stipulation' ").

[9] In further support of his contention that the agreement is ambiguous, the defendant makes several other arguments relying on the extracontractual evidence adduced at the hearing on the motion for contempt, including the transcript of the court's canvass of the parties at the original dissolution hearing. We do not reach these arguments in light of our conclusion that the agreement is unambiguous on its face. See *Casablanca* v. *Casablanca*, supra, 190 Conn. App. 617–18 ("'[w]hen only one interpretation of a contract is possible, the court need not look outside the four corners of the contract' ").

[10] To be clear, the defendant does not claim that his actions were not wilful because he could not comply with the agreement.

[11] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect."

[12] Taken to its logical conclusion, the defendant's position is untenable. It would frustrate our existing family law system if a party could avoid an obligation to remit funds to his former spouse by instead using those funds to purchase real property for the party's own use. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 96–97, 161 A.3d 1236 (2017) ("[t]he court's enforcement power is necessary to 'preserve its dignity and to protect its proceedings' ").

[13] To support his argument that the court's award of relief was improper, the defendant primarily relies on *Blaisdell* v. *Blaisdell*, Superior Court, judicial district of New London, Docket No. FA-000121221-S (October 3, 2001) (30 Conn. L. Rptr. 543, 544) (denying "motion to transfer by statute" because relief requested improperly sought to modify property settlement in dissolution judgment). Even if we were to conclude that *Blaisdell* supports the defendant's argument, we recognize that it is not binding on this court. See *Rider* v. *Rider*, 210 Conn. App. 278, 287 n.13, 270 A.3d 206 (2022) (Superior Court decisions not binding on Appellate Court).